FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION** 2017 JAN 23 AM 11:47

**DAWN MAILLES,**

    **Plaintiff,**

v.                                                                      Case # 8:17-CV-160-T-35 AEP

**METROPOLITAN LIFE**
**INSURANCE COMPANY and**
**MICRO MATIC USA, INC.**

    **Defendants.**
_____/

## COMPLAINT

The Plaintiff, DAWN MAILLES (MAILLES) sues the Defendants, METROPOLITAN LIFE INSURANCE COMPANY (METLIFE) and MICRO MATIC USA, INC. states:

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. § 1132.

3. METLIFE is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. MICRO MATIC USA, INC. is a foreign profit corporation that is or was at all relevant times engages in business in this District.

5. MAILLES is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

6. MAILLES is and/or was a former employee of Micro Matic USA, Inc..

7. At all relevant times, MAILLES was a participant in an employee benefit plan providing disability benefits sponsored by her employer, Micro Matic USA, Inc. (Plan).

8. Micro Matic USA, Inc. is the Plan Sponsor.

9. Micro Matic USA, Inc. is the Plan Administrator.

10. METLIFE is purported to be the Claims Administrator.

11. A copy of the document which was purported to be the Plan's Summary Plan Description (SPD) is attached hereto and incorporated by reference as Exhibit A. MAILLES believes that the SPD was prepared by METLIFE, not Micro Matic USA, Inc., and she does not know if a formal plan document was ever adopted or if such a document exists. This SPD is missing pages and was delivered in that form, via secure link https://micro-matic.sharefile.com/d-s54f748307214dfla from Micro Matic USA, Inc.

12. Also attached is a group disability insurance policy issued and underwritten by METLIFE (Group Policy No. TM 05984464-G – Exhibit B).

13. The SPD and group policy (Exhibit A & B) were drafted in its entirety by METLIFE.

14. The group policy (Exhibit B) is a contract of adhesion.

15. No other plan documents exist other than the SPD and group insurance policy (Exhibit A & B).

16. No originating plan document exists which instituted the Micro Matic USA, Inc. disability plan.

17. No originating plan document or other document exists in which Micro Matic USA, Inc. reserved any discretionary authority to itself in relation to the Micro Matic USA, Inc. disability plan.

18. The employees or agents of Micro Matic USA, Inc. and METLIFE did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority

from Micro Matic USA, Inc. to METLIFE before purchasing the group insurance policy (Exhibit A) to fund its disability plan.

19. The employees or agents of Micro Matic USA, Inc. and METLIFE did not discuss or correspond about the existence, meaning, or significance of the process required to delegate discretionary authority from Micro Matic USA, Inc. to METLIFE before purchasing the group insurance policy (Exhibit A) to fund its disability plan.

20. At the inception of its disability plan, Micro Matic USA, Inc., did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

21. At the time it purchased the group disability insurance policy (Exhibit A) from METLIFE, Micro Matic USA, Inc. did not have any discretionary authority which it could delegate to an insurance company.

22. No document prepared by Micro Matic USA, Inc. delegates any discretionary authority to METLIFE.

23. Despite efforts by METLIFE, METLIFE was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because or one or more of the following:

    a) Micro Matic USA, Inc., never had the authority to delegate discretion to METLIFE following the inception of its disability plan;

    b) Discretionary authority is a material term to the group insurance policy (Exhibit A) that Micro Matic USA, Inc. never discussed with METLIFE;

    c) The group insurance policy (Exhibit A) is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

      d)      If it had power to delegate discretion, Micro Matic USA, Inc. did not properly delegate discretionary authority over claims decisions to METLIFE; or

      e)      The Plan does not clearly vest METLIFE with discretion.

24.      De novo review applies to this action.

25.      To the extent that this court determines that de novo review does not apply to this action, METLIFE pays claims from its own general assets as the claims decision maker and funder of the group insurance policy (Exhibit A), and METLIFE operates under a conflict of interest.

26.      METLIFE is the Plan's claims administrator, handling claims under the insurance policy (Exhibit A).

27.      Any claims paid under the group insurance policy (Exhibit A), are paid by METLIFE entirely from METLIFE's assets.

28.      No assets of Micro Matic USA, Inc. are used to pay claims under the group insurance policy (Exhibit A).

29.      MAILLES made a claim for Long Term Disability benefits under the Plan.

30.      METLIFE paid MAILLES became disabled on October 3, 2014. She applied for LTD benefits and was accepted from January 1, 2015.

31.      On March 11, 2016, METLIFE terminated MAILLES Long Term disability benefits.

32.      On September 6, 2016, an appeal was filed on behalf of MAILLES requesting LTD benefits be paid.

33.      On December 8, 2016, METLIFE denied LTD benefits.

34.      METLIFE refused to pay the benefits sought by MAILLES and as ground for such refusal has alleged that Plaintiff does not meet the definition of disability from her own occupation.

35.      MAILLES's condition has not changed.

36. With respect to all claims made herein, MAILLES has exhausted all administrative/pre-suit remedies.

37. MAILLES is entitled to certain benefits under the Plan consisting of benefits for Long Term Disability since March 12, 2016, through the date of filing this action.

38. MAILLES has met the definition of total disability.

39. There are ten months of past due monthly benefit payments owed through the date of filing this action; and at the rate of $1,864.72 per month, METLIFE has deprived MAILLES of the aggregate sum of $18,647.20.

40. Plaintiff is entitled to benefits herein because:

   (a) The benefits are permitted under the Plan.

   (b) Plaintiff has satisfied all conditions to be eligible to receive the benefits.

   (c) Plaintiff has not waived or relinquished entitlement to the benefit.

41. Each monthly benefit payment owed since March 12, 2016, is a liquidated sum, and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

42. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), MAILLES is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

**WHEREFORE**, the Plaintiff, DAWN MAILLES, asks this Court to enter judgment against the Defendants, THE METLIFE INSURANCE COMPANY OF AMERICA and MICRO MATIC USA, INC., a foreign corporation, finding that:

   (a) The Plaintiff is entitled to Long Term Disability benefits from March 12, 2016, through the filing of this lawsuit; and

(b)  The Plaintiff must be awarded benefits in the amount not paid to the Plaintiff from March 12, 2016, to the date of filing this lawsuit—a total of $18,647.20—together with prejudgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid; and

(c)  The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(d)  For such other and further relief as this Court deems just and proper, including but not limited to:

1. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

2. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

3. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

DATED this **23rd** day of **January, 2017**.

*s/ William C. Demas*
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0142920
demas@tuckerludin.com and
JOHN V. TUCKER, ESQUIRE
Florida Bar # 899917
tucker@tuckerludin.com
TUCKER & LUDIN, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:  (727) 572-5000
Fax:  (727) 571-1415
Attorneys for Plaintiff